Filed 9/23/13  Lock v. Cunnyngham CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HELEN LOCK, as Administrator, etc., | D062716 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00151262-PR-LS-CTL) |
| DAVID CUNNYNGHAM et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge.  Affirmed.

Roy M. Doppelt and Associates and Scott C. Soady for Plaintiff and Appellant.

Dicks & Workman, Joseph G. Dicks and Linda Workman for Defendants and Respondents.

Helen Lock, administrator with will annexed of the estate of decedent Robert Clifford Reed, appeals an order granting the petition for partial distribution of the estate filed by claimants David Cunnyngham, Kristy Fyffe, Amy Austin, and Mirna Cunnyngham (together Claimants).  That petition, in effect, sought enforcement against

the estate of a judgment enforcing a settlement agreement, the subject of a prior appeal we decided in *Lock v. Cunnyngham* (Apr. 25, 2013, D062047 [nonpub. opn.]) (*Lock I*). In *Lock I*, we affirmed, as modified, the trial court's March 22, 2012, judgment ordering Lock to pay Claimants $91,500 out of property in the estate in the course of administration. Claimants subsequently filed, and the probate court granted, a petition for partial distribution from the estate based on that judgment. On appeal, Lock contends the probate court erred by issuing the order granting Claimants' petition for partial distribution.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 4, 2010, Reed died testate. Lock was appointed as administrator of his estate. After Lock rejected their claims against the estate, Claimants filed a wrongful death action against the estate based on Reed's murder of Mitch and Diane Cunnyngham. In December 2010, the parties entered into a pretrial settlement agreement in the wrongful death action that required Lock to convey to Claimants all estate assets after payment of court-approved administrative expenses. On March 2, 2011, a judgment was entered reflecting the terms of that settlement agreement.

On June 2, 2011, Lock filed her first and final account and report of administrator and petition for settlement, final distribution of insolvent estate and reserve, and statutory compensation to attorney and administrator (Final Account). She alleged the estate

---

[1] For a more complete discussion of the factual and procedural background in this case, please refer to our opinion in *Lock I*. We hereby incorporate that discussion into this opinion.

currently had assets with a total value of $1,126,352.37. She requested the probate court order that the estate be closed, approve the Final Account, and authorize her to distribute the estate's real property (valued at $365,000) to Claimants and distribute its cash on hand (approximately $757,852.37) to her for statutory administrator's fees ($25,197.89), her probate counsel ($25,197.89 for statutory attorney fees and $8,527.50 for extraordinary attorney fees), her litigation counsel ($68,441.68), Arlette Reed ($1,585.00 for funeral expenses), and Claimants' counsel for his client trust account ($623,902.41).

Claimants objected to the Final Account. In general, they asserted that the proposed payments to Lock, her probate counsel, and her litigation counsel, as well as to certain other individuals, were excessive and should be reduced. Claimants asked the probate court to order the immediate distribution of all estate assets, except for the amounts they contested.

On July 22, 2011, the probate court issued an order approving the Final Account for the most part, ordering distribution of real property to Claimants, cash to Claimants' counsel, and $25,197.89 as statutory attorney fees for Lock's probate counsel, except for a $155,000 reserve to be held until the remaining issues were resolved. The probate court also ordered Lock, Claimants, and their counsel to participate in a mandatory settlement conference with San Diego County Superior Court Judge Jay M. Bloom.

On August 12, 2011, following settlement negotiations, the parties signed a settlement agreement and Judge Bloom read into the record the terms of that settlement agreement. Judge Bloom stated:

3

"I'll indicate I've met with the parties, and we've reached a settlement. . . . [¶] It is as follows: $63,500 is to be released from the estate reserve of [$]155,000 for all attorney and administrative fees. The balance of the reserve, which is [$]91,500, is to go to [C]laimants. Claimants hereby agree to waive all objections. And Judge Bloom is to keep jurisdiction to enforce the settlement."

However, because of the parties' disagreement regarding the terms of the settlement agreement, the probate court did not sign a written order enforcing the agreement.

Claimants thereafter filed a motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6. They argued the settlement agreement required Reed's estate to pay them $91,500. Lock opposed the motion, arguing that because the parties did not know at the time of the settlement that the estate had substantial income tax liabilities, the settlement should be interpreted as allowing her to pay all administrative costs, expenses and income taxes before any amounts would be paid to Claimants.

On March 2, 2012, after hearing counsel's arguments, Judge Bloom granted Claimants' motion to enforce the settlement agreement. On March 22, he entered a judgment after settlement (Judgment) in Claimants' favor. Lock timely filed a notice of appeal challenging the Judgment. In *Lock I*, we affirmed the Judgment as modified. (*Lock I*, *supra*, D062047, at p. 17.)

On April 19, 2012, Claimants filed the instant petition for partial distribution of the estate and for an order compelling Lock to act. Based on the Judgment, Claimants requested the probate court order Lock to pay them $91,500. On May 23, the court heard arguments of counsel and granted the petition. On June 20, the court issued a written

4

order (Order) after hearing granting the petition for partial distribution of the estate and compelling Lock to act. The Order stated:

> "[Lock and her attorney] shall pay Claimants $91,500 within 24 hours of this Court's ruling on this Petition. Payment is to be in the form of a check made payable to [the client trust account of Claimants' attorneys]. [Claimants' attorneys] shall deposit said check into its client trust account and shall hold said funds therein until further order of this Court. Until such further order of this Court, [Claimants' attorney] shall not disburse any of said funds to any party, attorney, client, Claimant, itself or any other person or entity."

Lock timely filed the instant notice of appeal challenging the Order.

DISCUSSION

I

*Lock's Contentions on Appeal*

Lock contends the probate court erred by granting Claimants' petition for partial distribution after the Judgment was entered. Her entire argument in her opening appellant's brief is as follows:

> "The papers filed in support of the appeal in [*Lock I*] explain in detail that the Judgment erroneously ordered Lock to pay $91,500 to Claimants immediately, rather than directing distribution of the $155,000 residual in the course of administration and only after payment of all other higher priority debts, including the agreed-upon $63,500 in administrative expenses, and any and all state and federal income taxes. [Citation.] The erroneous language was the sole basis for the [Order], which directed Lock to pay $91,500 to Claimants' attorneys within 24 hours of the trial court's ruling. As a result, Lock was deprived of access to the estate funds needed to pay substantial tax liabilities." (Fn. omitted.)

By so arguing, Lock, in effect, incorporates her appellate briefs in *Lock I* and relies solely on those briefs and their arguments in contending the probate court erred by issuing the

5

Order involved in this appeal. Because in our *Lock I* opinion we rejected the substantive arguments Lock raised in that appeal and affirmed the Judgment as modified, we likewise must reject those same arguments raised in the context of this appeal.[2] Because the doctrines of law of the case, res judicata, and/or collateral estoppel (or issue preclusion) apply to the questions of law we decided in *Lock I*, we must follow our prior decisions in this matter and cannot reach contrary conclusions on the same issues raised in this appeal. (See, e.g., *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491; *Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1071; *Santa Clarita Organization for Planning the Environment v. County of Los Angeles* (2007) 157 Cal.App.4th 149, 156; *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434; *Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 489; *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1162; *Risam v. County of Los Angeles* (2002) 99 Cal.App.4th 412, 420.) Accordingly, Lock has not carried her burden on appeal to show the probate court erred by issuing the Order.

As we concluded in *Lock I*, to the extent Lock repeats her argument that the probate court cannot order her to distribute estate assets (e.g., $91,500) to Claimants before the estate's income taxes are paid, she has not carried her burden on appeal. In any

---

[2]     We decide this appeal based on these grounds and reject Claimants' argument that Lock's appeal of the Order is "moot." The appeal is not technically moot because there has been no subsequent event that would preclude us from addressing the issues in this appeal and/or rendering effective relief. (See, e.g., *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 864-865; *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)

event, at the time of the Order, there had not yet been any final account and report and/or petition for final distribution approved by the probate court.  Accordingly, it appears the probate court has yet to decide the issue of income tax liabilities of the estate and any statutory prohibitions against distributions of estate assets until those income taxes are paid.  As we concluded in *Lock I*, "[i]n the event the probate court determines there are insufficient estate assets to pay both the estate's tax liabilities and Claimants' $91,500, the appropriate remedy for the deficiency will be a matter for the probate court to determine in the first instance.  It is not a matter for us to decide in this appeal." (*Lock I*, *supra*, D026047, at p. 16, fn. 6.)

## DISPOSITION

The order is affirmed.  Claimants are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

7